UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ALEX POINVIL,

      Petitioner,

v.                                    Case No.  2:26-cv-1015-JES-NPM

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et
al.,

      Respondents.

_____/

**ORDER**

Before the Court are Petitioner Alex Poinvil's petition for writ of habeas corpus (Doc. 1) and the government's response (Doc. 6).  For the reasons below, the Court grants the petition to the extent set forth in this Order.

**I.   Background**

Alex Poinvil is a native and citizen of Haiti who entered the United States on April 29, 2022.  (Doc. 1 at 4).  On May 3, 2022, he was paroled into the interior of the United States.  (Id.) Poinvil applied for asylum on March 11, 2023.  (Id.)  On December 4, 2025, an immigration judge determined that Poinvil has a significant possibility of eligibility for asylum under § 208 of the INA.  (Id. at 5).  He was then placed in removal proceedings. (Id.)  Poinvil is married to a United States citizen who has filed an I-130 petition for alien relative.  He has a pending application

for adjustment of status.  (Id.)  Poinvil has no criminal record.  (Id. at 6).

Poinvil has been held at Glades County Detention Center since December 4, 2025.  On March 27, 2026, an immigration judge found that he was a "good candidate for bond," but denied bond after concluding that Poinvil is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) throughout his removal proceedings.  (Id.) Poinvil argues, among other things, that he is entitled to a bond hearing under 8 U.S.C. § 1226(a).  (Doc. 1 at 35-36).

## II.  Discussion

The core dispute before this Court is whether 8 U.S.C. § 1225(b)(2) or § 1226(a) of the Immigration and Nationality Act ("INA") applies to Poinvil.  The distinction matters because § 1225(b)(2) mandates detention throughout removal proceedings, whereas noncitizens detained under § 1226(a) have the right to a bond hearing before an immigration judge.

Section 1225(b)(1) establishes the procedures for expedited removal.  It allows immigration officers to remove noncitizens "without further hearing or review."  8 U.S.C. § 1225(b)(1)(A)(i). As expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways.  First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their

2

application for admission." Coalition for Humane Immigrant Rights v. Noem, 805 F. Supp. 3d 48,61 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). And "[a]mong that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who 'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility.'" Id. (quoting 8 U.S.C. § 1225(b)(1)(A)(i)-(iii)).

Section 1226 of the INA also "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). But § 1226 provides additional safeguards, including the right to an individualized bond hearing. Id. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.")(citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Noncitizens already in the country are treated differently than those seeking entry. As the Supreme Court observed, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court

3

has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953)); see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001)("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). And until recently, DHS has treated aliens—such as Poinvil—already present in the country as detained under § 1226 and entitled to bond hearings.[1]

Respondents argue that, despite having resided in the United States for more than three years, Poinvil is properly detained under section 1225(b).[2] Indeed, the Court recognizes that in

---

[1] The Government's recent about-face toward mass mandatory detention under § 1225 was blessed by the Board of Immigration Appeals ("BIA") in In re Yajure Hurtado, 29 I.& N. Dec. 216, 229 (B.I.A. 2025). But the Court owes no deference to the BIA's statutory interpretations. In 2024, the Supreme Court concluded that "agencies have no special competence in resolving statutory ambiguities. Courts do." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400–01 (2024). And "[c]ourts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences." Id. at 403.

[2] In Patel v. Hardin, No. 2:25-cv-870-JES-NPM (M.D. Fla. Dec. 1, 2025), Respondents argued that the Court lacks jurisdiction to consider this petition and that the petitioner has not properly exhausted his administrative remedies. The Court rejected those arguments in Patel and in scores of other recent cases presenting the same issues. See, e.g., Cetino v. Hardin, No. 2:25-cv-1037-JES-DNF (M.D. Fla. Dec. 12, 2025); Reyes Rodriguez v. Florida Southside Facility, No. 2:25-cv-1012-JES-DNF (M.D. Fla. Dec. 15,

Buenrostro-Mendez v. Bondi, et al.,166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026), the Fifth Circuit and Eighth Circuits concluded that most noncitizens apprehended anywhere in the United States are never eligible for release on bond, no matter how long they have resided inside the United States. This is contrary to the conclusions reached by the overwhelming majority of district court judges to have considered the issue. See also Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1060–62 (7th Cir 2005) (concluding that the government was unlikely to prevail on the merits that petitioner was subject to mandatory detention under § 1225(b)(2)(A)). This Court respectfully disagrees with the Fifth and Eighth Circuits' analyses and finds the analysis in Castanon-Nava and the dissents in Buenrostro-Mendez and Avila to be more persuasive on the statutory interpretation issue. In any event, neither Buenrostro-Mendez nor Avila are binding precedent in this Court.

The government could have detained Poinvil when he entered the country in 2022. Instead, they released him into the United States on his own recognizance and allowed him to stay for more than three years before re-detaining him. Thus, the Court rejects

---

2025). In those cases, the Court was satisfied of its jurisdiction and determined that exhaustion was excused because it would be futile. The Court's reasoning on these issues also applies here.

the government's argument that Poinvil is subject to expedited removal and concludes that Respondents' authority to detain him stems from section 1226(a).  As a noncitizen detained under section 1226(a), Poinvil has a right to a bond hearing.

The Court will thus order Respondents to **either** release Poinvil or bring him before an immigration judge for a merit-based § 1226 bond hearing within ten days.  To satisfy this Order, the hearing must include consideration of all evidence properly submitted by the petitioner and the factors announced in In re Guerra, 24 I. & N. Dec. 37 (BIA 2006), and Poinvil's counsel must receive at least 48 hours' notice of the hearing, but only if they enter their appearance in the Executive Office of Immigration Review's online filing system in time to receive the notice.

The Court is aware that the Executive Office for Immigration Review ("EOIR") is the agency that schedules bond hearings.  In other cases, Respondents have claimed they cannot direct the EOIR when to conduct a bond hearing.  Regardless, subjecting Poinvil to mandatory detention under § 1225(b)(1) is unlawful.  If Respondents are unable to ensure that Poinvil timely receives the meaningful and thorough bond hearing to which he is entitled under § 1226(a), they must release him.

Accordingly, it is **ORDERED**:

1.   Alex Poinvil's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** to the extent set forth in this Order.

6

2.    Within **TEN (10) DAYS** Respondents shall either provide Poinvil with the statutory process required under § 1226—which includes a merit-based bond hearing—or release him under reasonable conditions of supervision.[3]

3.    If Respondents release Poinvil, they shall facilitate his transportation from the detention facility by notifying his counsel of when and where he may be collected.

4.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on April 24, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] In recent cases in the Middle District of Florida—and despite being ordered to do so—the immigration judge has refused to provide a merit-based bond hearing, determining that under Hurtado he had no discretion to issue a bond. See, e.g., Fernandez Alvarez v. Noem, et al., No. 2:26-cv-313-SPC-DNF (M.D. Fla. Mar. 4, 2026); Nahadian Fard v. Bondi, et al., No. 6:26-cv-157-GAP-RMN, Doc. 23 (M.D. Fla. Feb. 12, 2026). If the immigration judge in this case reaches the same conclusion or otherwise declines to consider bond, Petitioner must be released.